UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

REBECCA BRAMEL

    Plaintiff,

v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:13-cv-281

Dlott J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Rebecca Bramel filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes.  For the reasons explained below, I conclude that the ALJ's finding of non-disability should be REVERSED, because it is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In early 2009, Plaintiff applied for DIB and SSI alleging disability as of March 31, 2006 due to physical and mental impairments.  (Tr. 11, 167-169, 172-179).  Plaintiff's applications were denied initially and upon reconsideration, and Plaintiff timely requested a hearing. (Tr. 11, 90-93, 94-96, 101-103, 108-110, 115-116).  In January 2011, Administrative Law Judge McNeil held a hearing at which Plaintiff, a psychological expert, and a vocational expert testified. (Tr. 29-67).  On June 21, 2011, ALJ McNeil denied Plaintiff's applications in a written decision.  (Tr. 11-21).  Plaintiff's now seeks judicial review of the denial of her applications for benefits.

1

Plaintiff was 45 years old at the time of her alleged disability onset date. (Tr. 19). She has past relevant work as a waitress, fast food worker, packer, and housekeeper. (Tr. 185-190, & 206). She has a history of mental illness and substance abuse related to her past sexual, physical and mental abuse as a child. She successfully completed drug and alcohol rehabilitation programs, but relapsed due to flashbacks from her childhood. She is alleging disability based upon Bipolar Disorder, Hepatitis C, Coronary Artery Disease, and Cervical Degenerative Disc Disease.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "bipolar disorder and mood disorder." (Tr. 14). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform a full range of work at all exertional limitations with the following nonexertional limitations:

> Due to mental health impairments she can understand and remember simple instructions, sustain attention to complete simple repetitive tasks where production quotas are not critical, tolerate co-workers and supervisors with limited interpersonal demands in an object-focused non-public work setting, and adapt to routine changes in a simple work setting.

(Tr. 16). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff can perform jobs that exist in significant numbers in the national economy, including such jobs as maid, janitor and kitchen helper. (Tr. 28). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) improperly weighing the opinion evidence in determining Plaintiff's RFC; 2) improperly determining that Plaintiff could sustain employment; and 3) finding that Plaintiff's degenerative disc disease and coronary artery disease were not severe impairments. Upon close analysis, the undersigned finds Plaintiff's first two assignments of error are well-taken and dispositive. As such, this matter should be remanded for further fact-finding and analysis.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

*1. Evaluation of the Opinion Evidence*

Plaintiff asserts first that the ALJ's RFC finding is not supported by substantial evidence because it is based upon an improper evaluation of the opinion evidence. Plaintiff contends that in the reasons given by the ALJ in discounting the opinions of her treating physician, examining consultative psychologist and reviewing medical advisor were not "good reasons" mandated by agency regulations and controlling law. Plaintiff further asserts that the ALJ failed to provide sufficient rationale for the assigned significant weight to the opinions of the state agency physicians. The undersigned agrees that the ALJ's evaluation of the opinion evidence is not substantially supported.

Here, with respect to Plaintiff's mental impairments, psychologist, Susan Kenford, Ph.D. examined Plaintiff at the request of the Bureau of Disability in March 2006. Dr. Kenford diagnosed Plaintiff with the following: bipolar disorder, mixed, moderate, polysubstance dependence, in early remission, hepatitis C, and early stages of sobriety. Dr. Kenford opined Plaintiff showed signs of mania, pressured speech, problems thinking, racing thoughts and history of severe depressive episodes. (Tr. 391). Dr. Kenford believed that Plaintiff would not be able to work a job that required interaction

5

with the public due to a long history or volatility in her interactions with others. Dr. Kenford noted Plaintiff's ability to maintain concentration was very poor and she would have a hard time applying cognitive skills. Dr. Kenford opined that: (a) Plaintiff could not perform jobs that would require interaction with the public; (b) Plaintiff's ability to perform simple repetitive tasks from a cognitive standpoint was considered reasonably intact; and (c) Plaintiff's ability to handle the everyday stresses and pressures of a work environment was considered significantly impaired. (Tr. 391-392). Dr. Kenford further assigned Plaintiff a Global Assessment of Functioning (GAF)[1] score of 30, which indicates a serious impairment in communication or judgment and/or an inability to function in almost all areas of daily living.

Dr. Melinda Niebur, Plaintiff's treating psychiatrist from Talbert House, completed an RFC on January 27, 2011. Dr. Niebur diagnosed Plaintiff with the following: polysubstance dependence, adjustment disorder with mixed disturbance of emotion and conduct, high blood pressure, hepatitis C and assigned a GAF of 55. Dr. Niebur, reported a history of Plaintiff being assaulted and raped at age sixteen. Dr. Niebur noted Plaintiff would require ongoing treatment for depression and anxiety. (Tr. 746). Dr. Niebur identified the following symptoms: decreased energy, thoughts of suicide, worthlessness, mood disturbance, recurrent recollections of traumatic experiences, persistent disturbance of mood, substance dependence, isolation, unstable interpersonal relationships and damaging behavior, emotional liability, deeply ingrained patterns of behavior, vigilance and scanning, easy distractibility, memory impairment,

---

[1] The Global Assessment of Functioning (GAF) is a numeric scale (0 through 100) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults, e.g., how well or adaptively one is meeting various problems-in-living.

and sleep disturbance. (Tr. 747). Dr. Niebur opined that Plaintiff would be absent from work more than four days a month. (Tr. 748).  She also noted that Plaintiff had side effects from her medication that caused drowsiness, dizziness, blurred vision and headaches.  (Tr. 746).

In January 2011, Dr. Niebur opined that Plaintiff was unable to meet competitive standards in: (a) maintaining regular attendance and being punctual within customary, usually strict, tolerances; (b) working in coordination with or proximity to others without being unduly distracted; (c) completing a workday and workweek without interruptions from psychologically based symptoms; (d) accepting instructions and responding appropriately to criticism from supervisors; (e) getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; (f) dealing with normal work stress; (g) dealing with the stress of semi-skilled and skilled work; (h) interacting appropriately with the general public; and (i) maintaining socially appropriate behavior. (Tr. 749-750). Also, Dr. Niebur noted that Plaintiff had marked difficulties in maintaining social functioning and would be absent from work more than four days per month. (Tr. 748, 750).

Dr. Rogers, Ed.D testified at the administrative hearing as an impartial medical expert and provided responses to interrogatories provided by the ALJ.  After reviewing the medical evidence, Dr. Rogers found the following impairments: bipolar disorder, mood disorder, substance abuse, and antisocial tendencies. (Tr. 725). Dr. George Rogers opined that Plaintiff had marked difficulties maintaining social functioning, concentration, persistence or pace and moderate difficulties in her activities of daily living. Dr. Rogers noted the following supporting evidence: arrested numerous times,

homelessness, married and divorced four times, lost jobs due to problems with employees and undependability, concentration problems, restlessness, fidgety, racing thoughts, residential treatment, mania, bipolar and substance abuse. (Tr. 726). Dr. Rogers believed Plaintiff seemed to meet listings 12.04 (A.3), and 12.09. Dr. Rogers stated the review of the evidence showed episodes of depression, mania, agitation and mood swings. (Tr. 727). Finally, Dr. George Rogers noted that Plaintiff had a history of one or more years of inability to function outside of highly supportive living arrangements such as time in jail or working with the court clinic and residential or intensive substance abuse programs. (Tr. 728).

Additionally, the record contains assessments from two non-examining state agency psychologists who reviewed the record at the request of the Agency in April and July 2009. Notably, in April 2009, state agency reviewing psychologist Dr. Hoyle opined that Plaintiff had no more than mild limitations in conducting activities of daily living and only moderate limitations in maintaining social functioning and maintaining concentration, persistence, or pace. (Tr. 482). Dr. Hoyle also found that Plaintiff had no marked limitation in the realms of: (a) understanding and memory; (b) sustained concentration and persistence; (c) social interaction, and (d) adaptation. (Tr. 468-469). In July 2009, state agency reviewing psychologist Dr. Finnerty affirmed Dr. Hoyle's findings. (Tr. 467).

In formulating Plaintiff's mental RFC, the ALJ gave significant weight to Dr. Kenford's assessment as well as the findings of the state agency psychologists because he found their findings to be consistent with the objective evidence and the credible portion of the activities of daily living evidence. (Tr. 18). The ALJ afforded "less weight"

8

to Dr. Niebur's assessment because he determined that it was not fully supported by the sources own treatment notes, is not based on a superior longitudinal record, and is not consistent with the credible portion of the activities of daily living evidence.  The ALJ further noted that Dr. Neibur's assessment "appears to by highly dependent on the claimant's reports of her symptoms and limitations." (Tr. 18).  The ALJ also cited to the fact that Dr. Neibur had only seen Plaintiff twice at the time of her assessment thereby "further erod[ing] the reliability of her assessment." *Id.*  Similarly, the ALJ also assigned "less weight" to the testimony and interrogatories completed by Dr. Rogers, the impartial medical expert because he provided inconclusive responses with respect to claimant's condition.  As detailed above, Dr. Rogers indicated that Plaintiff's seems to meet listing 12.04 and 12.09.  The ALJ also determined that Dr. Roger's assessment was not consistent with the credible portions of the activities of daily living evidence and appears to be highly dependent upon limitations and symptoms reported by the claimant, whom the ALJ determined to be an unreliable source.

In evaluating the opinion evidence the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart,* 192 Fed. Appx. 456, 461 (6th Cir.2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)).

It is well established that the "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner Of Social Sec.,* 581 F.3d 399, 406 (6th Cir.2009) (quoting *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir.2004). A finding by the ALJ that a treating physician's opinion is not consistent with the other substantial evidence in the case record "means only that the opinion is not entitled to 'controlling weight,' *not that the opinion should be rejected."* Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4 (emphasis added). "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley,* 581 F.3d at 408. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i)(ii); 416 .927(d)(2)(i)(ii); *Wilson,* 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d) (3)-(6), 416.927(d)(3)-(6); *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004).

The ALJ must satisfy the clear procedural requirement of giving "good reasons" for the weight accorded to a treating physician's opinion: "[A] decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the

10

treating source's medical opinion and the reasons for that weight.' Social Security Ruling 96–2p, 1996 WL 374188, at *5 (1996)." *Wilson,* 378 F.3d at 544. The specific reasons requirement exists not only to enable claimants to understand the disposition of their cases, but to ensure "that the ALJ applies the treating physician rule and permit[ ] meaningful review of the ALJ's application of the rule." *Id.* Only where a treating doctor's opinion "is so patently deficient that the Commissioner could not possibly credit it" will the ALJ's failure to observe the requirements for assessing weight to a treating physician not warrant a reversal. *Id.* at 547. Here, the ALJ's decision does not reflect an analysis of these factors.

First, the ALJ rejected the findings of Plaintiff's treating physician, Dr. Niebur and Dr. Rogers, the medical expert, in part, because their opinions were based upon Plaintiff's reports of her symptoms. However, contrary to the findings of the ALJ, the fact that those opinions were based on Plaintiff's self-reports does not provide an adequate basis to reject such findings. Notably, the Sixth Circuit Court of Appeals, citing *Poulin v. Bowen,* 817 F.2d 865 (D.C.Cir.1987), stated that:

> A psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment ... consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine .... In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices [sic] in order to obtain objective clinical manifestations of medical illness .... When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Bowen,* 874 F.2d 1116, 1121, (6th Cir. 1989).

11

In *Blankenship,* the Sixth Circuit concluded that no cause existed to question the diagnosis of a psychiatrist made after only one interview and where no psychological testing had been conducted and even though the doctor noted the need for a more accurate history. *Blankenship,* 874 F.2d at 1121. Thus, interviews are clearly an acceptable diagnostic technique in the area of mental impairments and Dr. Niebur and Dr. Rogers could rely upon Plaintiff's subjective complaints illicited during her treatment sessions in formulating Plaintiff's functional restrictions. *See Warford v. Astrue,* No. 09–52, WL 3190756, at *6 (E.D .Ky. Aug. 11, 2010) (finding interviews are an acceptable diagnostic technique in the area of mental impairments).

Furthermore, the additional reasons given by the ALJ for rejecting Dr. Niebur's findings, do not constitute "good reasons" for rejecting his findings in accordance with agency regulations. The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir.2004).

Here, as detailed above, the ALJ's supplied reasons for giving Dr. Niebur's opinion little weight was that it was not supported by her own treatment notes, not based on a superior longitudinal record, and was not consistent with the credible

12

portions of the activities of daily living.[2] The ALJ, however, failed to identify the portions of Dr. Neibur's notes that were inconsistent with her assessment. Furthermore, although the ALJ stated that Dr. Neibur's assessment was inconsistent with plaintiff's credible activities of daily living ("ADL"), he again fails to state how and/or why Plaintiff's ADL's were inconsistent with Dr. Neibur's assessment. Such cursory statements by the ALJ are insufficient to permit a meaningful review of whether the ALJ properly applied the controlling weight test. *See Tilton v. Colvin*, 2:12-CV-408, 2013 WL 4048237 (S.D. Ohio Aug. 9, 2013).

Moreover, the ALJ's determination that Dr. Neibur's findings were entitled to less weight because her assessment was not based on a "superior longitudinal record" is ambiguous at best. Notably, the ALJ gave significant weight to the findings of Dr. Kenford, who examined Plaintiff in March 2006, and to the state agency psychologists, who rendered their opinions in June and July 2009, respectively. However, Dr. Niebur's provided her assessment in January 2011, and is the most recent assessment of Plaintiff's functioning. Its appears that the ALJ applied a more rigorous scrutiny to Dr. Niebur's opinions than to those of the nontreating and nonexamining opinions. The Sixth Circuit has found that this is precisely the inverse of the analysis that the regulation requires. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379 (6th Cir. 2013), reh'g denied (May 2, 2013). *See* also 20 C.F.R. § 404.1527(c); Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996). As such, the ALJ's decision indicates that his assessment of Dr. Neibur's opinions failed to abide by the Commissioner's regulations and therefore calls into question the ALJ's analysis. *See*

---

[2] Additionally, as explained below, the undersigned finds that Plaintiff's reported daily activities do

*Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir.2011) ("An ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence." (internal quotation marks omitted)).

Furthermore, the ALJ also noted that Dr. Niebur provided her assessment "after having only seen [Plaintiff] twice," further eroding the reliability of her assessment. (Tr. 18). However, as noted above, in *Blankenship,* the Sixth Circuit concluded that no cause existed to question the diagnosis of a psychiatrist made after only ***one interview*** and where no psychological testing had been conducted and even though the doctor noted the need for a more accurate history. *Blankenship,* 874 F.2d at 1121 (emphasis added).

In light of the foregoing, the undersigned finds that plaintiff's first assignment of error should be sustained. As such, this matter should be remanded because there is insufficient evidence in the record to support the Commissioner's conclusions. On remand, the ALJ should be instructed to properly evaluate and weigh the opinion evidence in accordance with Agency regulations and controlling law.

2. *Plaintiff's ability to sustain gainful employment*

Plaintiff's second assignment of error asserts that the ALJ erred in determining that Plaintiff could sustain employment. The undersigned agrees.

According to SSR96-8 p, an RFC is an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a "regular and continuing" basis. See SSR 96-8p at 28. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.; See also Sims v. Apfel*, 172 F.3d

---

not support a finding that she is able to perform *sustained* gainful activity.

879, 880 (10th Cir. 1999) (defining a "regular and continuing basis" as "8 hours a day, for 5 days a week, or an equivalent work schedule").

As detailed above, the ALJ discounted the opinions of Dr. Niebur, Dr. Kenford and Dr. Rogers because he found that Plaintiff's activities of daily living were not consistent with the limitations set forth in their opinions. He reasoned that the Plaintiff's activities of daily living, such as taking care of her own personal hygiene, performing household chores, using public transportation, and caring care her elderly father, that she would only be mildly limited in the this functional area.

In his RFC determination, the ALJ found, in relevant part:

> Claimant's normal activities support a finding that she is not precluded from engaging in work related activities. She works part-time at McDonalds and is able to relate adequately in public to ride public transportation. She interacts with co-workers and supervisors on a regular basis, which indicates that her anti-social issues are not as limiting as she has alleged. The claimant also provided care for her elderly father for a time during the relevant period, a presumably stressful activity. These activities indicate that the claimant is able to handle at least a minimal amount of work place pressure and stress.

(Tr. 18).

Such findings, however, are not an accurate portrayal of the record, and more importantly, do not establish that Plaintiff can perform sustained work activity as defined by Agency regulations. The undersigned agrees that plaintiff's ability to engage in daily activities does not establish *ipso facto* that she is able to engage in gainful activity 40 hours per week.  Notably, Plaintiff testified that at her current part time job (at McDonald's) she could only work as a cook, because she was unable to handle the stress of taking orders, speed requirements for a drive through position and figuring correct change as a cashier, and generally working with the public. (Tr. 43, 47-48, &

15

52-53). She added she had to take rest breaks at work and that she has had to leave the job due to stress. (Tr. 51).

With respect to caring for her father Plaintiff testified that her father physically and mental abused her throughout lifetime. After he suffered a massive stroke and was paralyzed, she testified that "there was nobody else to take care of him but me." She testified that it was "very hard to deal with." (Tr. 41). After he died, she testified that she "shutdown," became very depressed, suicidal and experienced panic attacks.

Thus, the ALJ erred by mischaracterizing and/or selectively relying on Plaintiff's testimony regarding her daily activities. *See Kelley v. Callahan,* 133 F.3d 583, 589 (8th Cir.1998) ("[A] person's ability to engage in personal activities such as cooking, cleaning, and hobbies does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity."). It is well recognized that a claimant's ability to perform limited and sporadic tasks does not mean she is capable of full-time employment. *See Carradine v. Barnhart,* 360 F.3d 751, 755 (7th Cir.2004); *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir.2001).

Based on the foregoing, the undersigned finds that the ALJ's determination that Plaintiff could sustain gainful activity is not substantially supported and should be re-evaluated on remand.

### III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and

16

further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher*, 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of her alleged onset date. *Id.* 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT**: the decision of the Commissioner to deny Plaintiff SSI benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g) consistent with this opinion. As no further matters remain pending for the Court's review, this case be **CLOSED**.

                                             */s Stephanie K. Bowman*
                                             Stephanie K. Bowman
                                             United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| REBECCA BRAMEL | Case No. 1:13-cv-281 |
| Plaintiff, | Dlott J. |
| | Bowman, M.J. |
| v. | |
| CAROLYN W. COLVIN,<br>COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).